■ In the Matter of MAURICE McELLIGOTT, Respondent, v NASSAU COUNTY CIVIL SERVICE COMMISSION et al., Appellants. [868 NYS2d 767]—

The petitioner applied to the Nassau County Civil Service Commission (hereinafter the Commission) for a position as a Nassau County police officer. In 2003 he passed the written civil service exam, and subsequently completed additional testing, including drug testing, physical fitness testing, a physical aptitude test, and a polygraph test.

After taking part in a group administration of the Minnesota Multiphasic Personality Inventory II (hereinafter the MMPI-2) to candidates for the position of police officer, the petitioner received notification that he was required to schedule an appointment with Dr. Robert Prince for a psychological interview to determine his suitability for the position. After the petitioner completed the psychological interview, the Commission directed him to make an appointment with Dr. Stanley Shapiro, a psychiatrist. The petitioner did so. Ultimately, the Commission notified the petitioner that it had disqualified him for failing to meet the psychological requirements of the position. The petitioner requested that the Commission reconsider his disqualification and submitted two independent psychological evaluations and numerous personal recommendations in support of his request. The Commission, upon reconsideration, adhered to its prior determination disqualifying the petitioner. The petitioner then commenced the instant proceeding pursuant to CPLR article 78 alleging that the Commission's determi-

nation, upon reconsideration, to adhere to its prior determination disqualifying him was arbitrary and capricious since it was based upon a subjective reaction to his personality, rather than on any objective criteria.

In its answer, the Commission explained, inter alia, that "[t]he first stage of the psychological screening process is the group administration of the Minnesota Multiphasic Personality Inventory Examination 2 (MMPI-2), a standardized computer scored personality profile examination containing 500 true/false questions. This law enforcement rating report is used by police departments nationwide. . . . For those applicants whose scores fall within the accepted range of variance, the psychological screening process ends. However, those candidates whose scores fall outside the normally accepted range are referred on to the second stage, e.g., the face to face interview with the clinical psychologist and various psychological testing."

This process was similarly described in an article by Shapiro submitted by the Commission in support of its answer, in which Shapiro explained that, between 1970 and 1979, "a total of 4249 candidates underwent the initial MMPI testing and of these 427 (10.8%) were scheduled for psychological testing" (Shapiro, *Psychiatric Examination of Law Enforcement Officer Candidates Over a 10-Year Period,* Comprehensive Psychiatry, May/June 1981).

In the course of this proceeding, the petitioner obtained a copy of his computer-generated score on the MMPI-2 test administered to him by the Commission, in addition to the reports prepared by the Commission-appointed psychologist and psychiatrists who examined him in connection with his application for the position of police officer. The petitioner argued that his MMPI-2 scores were well within the normal range of variance and that his disqualification constituted a "hatchet job by the Commission to get rid of the petitioner the only way they possibly could, by asserting 'psychological reasons.' "

In an order dated December 31, 2006, the Supreme Court directed the Commission, inter alia, to produce "(1) evidence setting forth the protocol which demonstrates what scores on the MMPI-2 examination fall within the acceptable range of scores; and (2) evidence demonstrating how Petitioner's MMPI-2 test results fell outside such range thereby requiring Petitioner to be referred to a Stage II screening evaluation."

In response to the court's order, the Commission submitted an affidavit from Dr. Robert Prince, the psychologist to whom it had sent the petitioner for psychological testing. In his affidavit, Prince asserted, contrary to the claims made by the Commis-

sion in the answer, that "[s]tandard practice requires that all candidates' MMPI-2 results be reviewed by a psychologist possessing a PhD degree. This same psychologist also conducts a mandatory interview with each candidate." According to Prince, "[a] candidate who has MMPI-2 test results in the normal range, which are confirmed by the mandatory interview, will be approved for employment as a police officer." However, "scores falling outside the range of acceptable MMPI-2 scores would warrant further psychological scrutiny and a stage II screening evaluation with a psychiatrist."

In the order appealed from, the Supreme Court found that Prince's statements directly contradicted the Commission's representation "that only candidates whose scores fall outside the established acceptable range are referred to Stage II of the screening process, which in this case consisted of a psychological testing session with Dr. Prince." Accordingly, the court directed the Commission, inter alia, to produce "the actual written protocol used, if any, in determining passage or non passage [*sic*] of applicant's MMPI-2 test [as well as] evidence demonstrating in what manner Petitioner's and other candidates' MMPI-2 test results fall outside [the acceptable] range [of scores] thereby requiring Petitioner to be referred to a Stage II screening evaluation." We affirm.

Contrary to the Commission's contentions, the court's order did not constitute an attempt to interfere with its discretion to determine the qualifications of police officers. Neither did the order impermissibly expand the scope of the instant proceeding. Far from demanding irrelevant evidence of the MMPI-2 results of other candidates, the court clearly directed production of evidence, such as a written protocol, that set forth the guidelines for determining whether any given candidate's MMPI-2 score fell outside of a pre-determined "normal" range that would trigger the decision to refer such candidate to stage II psychological evaluation.

The Commission's remaining contentions are without merit. Spolzino, J.P., Carni, Eng and Leventhal, JJ., concur.